# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:16-CR-155** |
| | : | |
| v. | : | **(Chief Judge Conner)** |
| | : | |
| **QUINTON NOEL GORDON**, | : | |
| | : | |
| **Defendant** | : | |

## **MEMORANDUM**

In 2018, the court sentenced defendant Quinton Noel Gordon to 168 months' imprisonment after he pled guilty to possession with intent to distribute heroin and cocaine. Gordon moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Docs. 89, 106). We will deny Gordon's motion.

## I. **Factual Background & Procedural History**

In June 2016, a grand jury returned an indictment charging Gordon with possession with intent to distribute heroin and cocaine in violation of 21 U.S.C § 841(a)(1) (Count 1), possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) (Count 2), and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count 3). (Doc. 1). Gordon, with the assistance of his court-appointed counsel, John A. Abom ("Attorney Abom"), sought and received approval for probation to conduct a "pre-plea presentence investigation" to ascertain whether Gordon qualified as a career offender under Section 4B1.1 of the United States Sentencing Guidelines. (See Docs. 41-43). The probation officer determined that, if Gordon were convicted of the pending federal

charges, he would qualify as a career offender under the Guidelines because of his 2008 New York state controlled-substance convictions. (Doc. 46 at 3-4).

Armed with this information, Gordon entered a plea agreement with the government containing the following pertinent terms. Gordon agreed to plead guilty to Count 1, which carried a 20-year maximum sentence. (Doc. 59 ¶ 1). He also agreed to stipulate that he was a career offender under the Guidelines, creating a Guidelines imprisonment range of 210 to 262 months before adjustment for acceptance of responsibility or application of the statutory maximum. (Id. ¶ 11). The agreement's career-offender provision explicitly provided that, if the court determined that Gordon did not qualify as a career offender, the United States would be free to withdraw from the plea agreement. (Id.) In exchange, the government agreed to dismiss Counts 2 and 3 of the indictment and credit Gordon with acceptance of responsibility. (Id. ¶¶ 1, 10). Notably, dismissal of Count 2 would obviate a mandatory five-year consecutive sentence that would have applied had Gordon been convicted at trial of the Section 924(c) offense. See 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii).

The court accepted Gordon's plea of guilty to Count 1. (Doc. 63). Prior to sentencing, Attorney Abom filed a memorandum arguing, *inter alia*, that Gordon's 2008 New York controlled-substance convictions did not implicate a career-offender designation. (See Doc. 71 at 3-4). Attorney Abom asserted that the offenses should only count as one predicate due to Gordon pleading guilty to both charges on the same day and being sentenced for both convictions on the same day—September 18, 2008, and December 1, 2008, respectively. (See id.) Attorney Abom further

contended that the presentence report contained inconclusive information about whether there was an intervening arrest. (Id.)

The court rejected this argument at sentencing and found that Gordon was properly classified as a career offender. (See 3/12/18 Sent. Tr. 2:21-5:2). The court determined that Gordon's total offense level was 30, his criminal history category was VI because of his career-offender status, and his resultant Guidelines range was 168 to 210 months' imprisonment.[1] (See id. at 5:19-21; Doc. 66 ¶¶ 19, 21, 30, 62; Doc. 80 at 1). Gordon received a sentence of 168 months' imprisonment, the bottom of the advisory Guidelines range. (Doc. 79).

Gordon did not appeal his conviction or sentence. However, in December 2018, he timely filed the instant Section 2255 motion. In his motion, Gordon asserts three grounds for relief: (1) ineffective assistance of counsel for advising Gordon to stipulate to career-offender status; (2) violation of due process because Attorney Abom misinformed Gordon about his status as a career offender, thus inducing Gordon to enter a guilty plea involuntarily; and (3) unlawful enhancement of Gordon's sentence by application of a two-level increase for possession of a firearm without proving this fact beyond a reasonable doubt. (Doc. 89 at 5-8). The court appointed counsel for Gordon, who amended Gordon's Section 2255 motion by

---

[1] Had Gordon not been classified as a career offender, his total offense level would have remained 30 but his criminal history category would have been III. (See Doc. 66 ¶¶ 12-14, 18, 20, 30). This change would result in a Guidelines range of 121 to 151 months' imprisonment. U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2016).

3

adding a new argument challenging Gordon's career-offender designation.  (See Doc. 109 at 6-11).

The court held an evidentiary hearing on August 1, 2019, during which Gordon abandoned his third ground for post-conviction relief.  (See 8/1/19 Hr'g Tr. 18:9-19).  The parties filed supplemental briefing after the evidentiary hearing, and Gordon's Section 2255 motion is now ripe for disposition.

## II. Legal Standards

### A. Motion Pursuant to 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States."  28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005).  A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record."  United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

4

### B. Ineffective Assistance of Counsel

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See id. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687. Conclusory allegations are insufficient to entitle a defendant to relief under Section 2255. See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the

5

inquiry if the defendant makes an insufficient showing in one. See Strickland, 466 U.S. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### III. Discussion

Gordon's remaining grounds for collateral relief—although relying on distinct rights guaranteed by different constitutional amendments—hinge on the same underlying premise: he does not qualify as a career offender under the Guidelines. We can address Gordon's Fifth and Sixth Amendment claims together because, if Gordon was correctly classified as a career offender, none of his allegations of ineffective assistance or violation of due process have merit. We take Gordon's arguments challenging career-offender status in turn.

#### A. New York Statute at Issue Criminalizes More Substances than Federal Controlled Substances Act

Gordon contends that his second New York controlled-substance conviction, (see Doc. 66 ¶ 28 (arrest date January 26, 2008)), does not qualify as a controlled-substance predicate under the career offender guideline. He argues that New York's controlled-substance schedule includes human chorionic gonadotropin ("hCG"), a substance that is not identified as a controlled substance under the schedules found in 21 U.S.C. § 812, and therefore the state statute at issue—NEW YORK PENAL LAW § 220.16—sweeps more broadly than its career-offender counterpart.

When a criminal defendant challenges whether a prior conviction qualifies as a career-offender predicate, the court's first task is to identify the precise statute of conviction. At times this can be a difficult undertaking, because prior records of

conviction may not clearly identify the specific subsection of a criminal statute under which a defendant was convicted. In this case, however, Gordon's prior offenses are both specified and undisputed. Gordon's post-conviction counsel has obtained and filed a sealed "Certificate of Disposition Indictment" from the Supreme Court of the State of New York for each offense. (See Docs. 106-1, 106-2). These records show that on November 14, 2007, Gordon was arrested for, and several months later pled guilty to, "criminal sale of a controlled substance 3rd degree PL 220.39 01 BF (cocaine)." (See Doc. 106-1); N.Y. PENAL LAW § 220.39(1) (McKinney 2007) (knowingly and unlawfully selling "a narcotic drug," a "class B felony"). On January 26, 2008, Gordon was arrested for, and several months later pled guilty to, "criminal possession of a controlled substance 3rd degree PL 220.16 01 BF (cocaine)." (See Doc. 106-2); N.Y. PENAL LAW § 220.16(1) (McKinney 2007) (knowingly and unlawfully possessing "a narcotic drug with intent to sell it," also a "class B felony"). At the evidentiary hearing, the parties agreed that these Certificates of Disposition accurately reflect Gordon's prior convictions. (See 8/1/19 Hr'g Tr. 12:6-17, 13:1-14, 14:5-9).

Because Gordon claims that his conviction under NEW YORK PENAL LAW § 220.16(1) does not qualify as a career-offender predicate, the court must determine whether this particular crime constitutes a "controlled substance offense" as defined by Section 4B1.2(b) of the Guidelines. It plainly does.

Section 4B1.2(b) defines a "controlled substance offense" for purposes of the career offender guideline—Section 4B1.1—as

7

> an offense under federal *or state law*, punishable by
> imprisonment for a term exceeding one year, that
> prohibits the manufacture, import, export, distribution, or
> dispensing of a controlled substance (or a counterfeit
> substance) or the *possession of a controlled substance* (or a
> counterfeit substance) *with intent to* manufacture, import,
> export, *distribute*, or dispense.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b) (emphasis added). The statute underlying Gordon's second 2008 conviction, Section 220.16(1), is a class B nonviolent felony, which is punishable by up to nine years' imprisonment. See N.Y. PENAL LAW § 70.70(1)(a), (2)(a)(i) (2008). And there can be no doubt that Section 220.16(1) is an offense under state law that prohibits the possession of a controlled substance—here, "a narcotic drug"—with intent to distribute it (*e.g.*, sell it), and thus qualifies as a controlled-substance predicate under Section 4B1.2(b). See Stevenson v. United States, No. 3:12-CR-145, 2019 WL 845418, at *9 (M.D. Pa. Feb. 21, 2019) (finding Section 220.16 divisible and that offense under subsection (1) qualifies as a "controlled substance offense" for career-offender purposes); Martinez v. United States, 17-CV-1049, 2020 WL 435364, at *3, 4-5 (W.D.N.Y. Jan. 28, 2020) (finding that violation of Section 220.16(1) constitutes "controlled substance offense" under career offender guideline); United States v. Taylor, No. 11 Cr. 310, 2012 WL 5991886, at *4-5 (S.D.N.Y. Nov. 30, 2012) (same), aff'd *sub nom.* United States v. Fitzgerald, 542 F. App'x 30 (2d Cir. 2013) (nonprecedential).

Gordon's argument that NEW YORK PENAL LAW § 220.16 includes hCG and thus sweeps more broadly than the federal Controlled Substances Act misses the mark. Contrary to Gordon's contention that this statute is indivisible, (see Doc. 89 at 18), Section 220.16 is clearly divisible by its 13 subsections, see Stevenson, 2019

WL 845418, at *6; United States v. Green, 480 F.3d 627, 629-30 (2d Cir. 2007) (applying modified categorical approach to Section 220.16). Accordingly, the appropriate focus is the particular *subsection* of conviction, not Section 220.16 generally, because the modified categorical approach applies when a statute is divisible. See United States v. Chapman, 866 F.3d 129, 134 (3d Cir. 2017). Section 220.16(1), moreover, specifically applies to only "narcotic" drugs, a class of substances that does not include hCG.[2] As outlined above, upon comparing subsection (1) of Section 220.16 to the Guidelines' definition of a controlled substance offense, there is no question that the elements align, rendering Section 220.16(1) a qualifying predicate offense.

**B.      New York Statutes at Issue Include Mere "Offers to Sell"**

Gordon also argues that New York's controlled-substance statutes define "sell" to include conduct that is not punishable under corresponding federal law. According to Gordon, NEW YORK PENAL LAW § 220.00(1)'s definition of "sell" includes mere offers to sell, thus criminalizing a broader swath of behavior than the federal definition of a controlled substance offense. For this argument, Gordon primarily relies on United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016), and United States v. McKibbon, 878 F.3d 967 (10th Cir. 2017). In Hinkle, the Fifth Circuit found that a Texas controlled-substance statute criminalized a "greater swath of conduct"

---

[2] New York law defines a "narcotic drug" as any controlled substance listed in "schedule I(b), I(c), II(b) or II(c)" of NEW YORK PUBLIC HEALTH LAW § 3306. See N.Y. PENAL LAW § 220.00(7). Chorionic gonadotropin, however, appears in schedule III of Section 3306. See N.Y. PUB. HEALTH LAW § 3306.

9

than the corresponding elements of Section 4B1.2(b)'s definition of "controlled substance offense" and thus did not qualify as a predicate conviction. Hinkle, 832 F.3d at 576-77. In McKibbon, the Tenth Circuit likewise held that a Colorado controlled-substance statute's definition of "sale" swept more broadly than Section 4B1.2(b) and—in the absence of state law clarifying or extending the plain language of the statute—the defendant's Colorado conviction could not constitute a predicate controlled substance offense. McKibbon, 878 F.3d at 972-74.

Hinkle and McKibbon are inapposite because they do not involve the New York controlled-substance statutes at issue. Relevant cases analyzing New York's controlled-substance laws have concluded that New York requires a *"bona fide"* offer to sell, not just any offer to sell, and therefore such statutes do not sweep more broadly than Section 4B1.2(b). Most notably, in United States v. Bryant, 571 F.3d 147 (1st Cir. 2009), the First Circuit carefully examined New York law, including Section 220.00(1)'s definition of "sell," and concluded that "in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—i.e., that defendant had both the intent and ability to proceed with the sale." Bryant, 571 F.3d at 158 (quoting People v. Samuels, 780 N.E.2d 513, 515 (N.Y. 2002)); see also Pascual v. Holder, 723 F.3d 156, 159 (2d Cir. 2013). The Bryant panel held that a New York controlled-substance conviction under an offering for sale theory required "*intent* to proceed with a sale" and thus qualified as a predicate under Section 4B1.2(b)'s possession-with-intent language. Id. (citing U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b)).

10

Gordon argues that Bryant was wrongly decided. We disagree. We note that the Third Circuit Court of Appeals, albeit in a nonbinding opinion, agreed with the reasoning and holding of Bryant regarding New York controlled-substance offenses and "offers to sell." See United States v. Santana, 677 F. App'x 744, 746 (3d Cir. 2017) (nonprecedential). Other courts have reached similar conclusions when considering whether the instant New York controlled-substance crimes constitute career-offender predicates under Section 4B1.2(b). See, e.g., Martinez, 2020 WL 435364, at *5 (conviction under Section 220.16(1) qualifies); Stevenson, 2019 WL 845418, at *9 (same); United States v. Henderson, No. 1:12-CR-255-01, Doc. 276 at 3-4 (M.D. Pa. June 16, 2014) (Jones, J.) (conviction under Section 220.39(1) qualifies); United States v. Melvin, 628 F. App'x 774, 776-78 (1st Cir. 2015) (rejecting "mere offer to sell" argument and holding that Section 220.39 categorically qualifies under "distribution prong" of Section 4B1.2(b)).

We conclude that Gordon's Section 220.39(1) and Section 220.16(1) offenses both constitute "controlled substance offenses" under Section 4B1.2(b) of the Guidelines. Accordingly, Attorney Abom was not ineffective for Sixth Amendment purposes when advising Gordon to enter a favorable plea deal stipulating to career-offender status. And because there was no deficient performance, we need not consider the issue of prejudice. See Strickland, 466 U.S. at 697; Lilly, 536 F.3d at 196. Nor was there a due process violation with respect to Gordon's plea agreement: Gordon knowingly and voluntarily entered that agreement believing, quite correctly, that he qualified as a career offender. We will therefore deny Gordon's Section 2255 motion because he has not demonstrated that his sentence

11

"was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a).

## IV. Conclusion

We will deny Gordon's motion (Doc. 89)—as amended—to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. We will also deny a certificate of appealability, as Gordon has failed to make the requisite "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 6, 2020